```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MORTGAGE RESOLUTION SERVICING, LLC,  :  15 Civ. 0293 (LTS) (JCF)
1ST FIDELITY LOAN SERVICING, LLC,    :
and S&A CAPITAL PARTNERS, INC.,      :     MEMORANDUM
                                     :     AND ORDER
                                     :
              Plaintiffs,            :
                                     :
     - against -                     :
                                     :
JPMORGAN CHASE BANK, N.A., CHASE     :
HOME FINANCE LLC, and JPMORGAN       :
CHASE & CO.,                         :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

On separate occasions, the plaintiffs -- Mortgage Resolution Servicing, LLC ("MRS"), 1st Fidelity Loan Servicing, LLC ("1st Fidelity"), and S&A Capital Partners, Inc. ("S&A") -- purchased residential mortgage debt from the defendants.  The plaintiffs bring this action alleging breach of contract claims and related tort actions, as well as one civil RICO claim.  The defendants JPMorgan Chase Bank, N.A. ("the Bank"), Chase Home Finance LLC ("Chase Home Finance"),[1] and JPMorgan Chase & Company ("JPMC"), now move pursuant to 28 U.S.C. § 1404(a) to have this case transferred to the United States District Court for the District of Columbia ("the D.C. Court").  For the reasons that follow, the motion is denied.

Background

Each of the plaintiffs is in the business of buying

---

[1] In May 2011, Chase Home Finance merged into the Bank. (Third Amended Complaint ("3d Am. Compl."), ¶ 7).

1

residential mortgage loans that "are not performing according to their original terms." (3d Am. Compl., ¶ 11). Upon purchasing the mortgages, the plaintiffs negotiate payment terms with the borrowers with the goal of avoiding further payment defaults. (3d Am. Compl., ¶ 12). Between 2005 and 2010, S&A and 1st Fidelity respectively acquired from Chase Home Finance approximately 650 and 350 mortgages. (3d Am. Compl., ¶¶ 14-15). Additionally, in February 2009, after months of communications between the parties, Chase Home Finance sold MRS 3,529 mortgage loans (with an outstanding balance of $156 million) for $200,000. (3d Am. Compl., ¶¶ 19-39). The Third Amended Complaint asserts nine causes of action: (1) breach of contract on behalf of MRS; (2) breach of contract on behalf of S&A; (3) breach of contract on behalf of 1st Fidelity; (4) conversion on behalf of all plaintiffs; (5) tortious interference with prospective economic advantage on behalf of all plaintiffs; (6) fraud and fraudulent inducement on behalf of MRS; (7) negligent misrepresentation on behalf of MRS; (8) slander of title on behalf of all plaintiffs; and (9) a civil RICO claim on behalf of all plaintiffs. (3d Am. Compl., ¶¶ 148-220). In one way or another, the plaintiffs' claims all stem from their purchase of mortgage loans from the defendants.

The allegation that ties the plaintiffs' breach of contract, tort, and civil RICO causes of action[2] together is that the defendants, after selling mortgage loans to the plaintiffs, released liens securing those loans, purported to forgive debt on

---

[2] Specifically, counts 1-5 and 8-9.

mortgages they sold, and accepted and retained payments on loans they no longer owned. (3d Am. Compl., ¶¶ 152, 157, 162, 168, 172, 194, 204). Those claims pursued by MRS alone[3] include allegations that the defendants sold it loans that were defective and that the defendants fraudulently and negligently misrepresented the nature and quality of those loans. (3d Am. Compl., ¶¶ 177-181, 186-191). The plaintiffs originally filed suit in New York state court, but, in January 2015, the defendants removed the case here. (Notice of Removal, ¶ 1).

Looming in the background of this case are two somewhat related matters. First, in March 2012, the United States and forty-nine states filed suit in the D.C. Court against numerous financial institutions (including the defendants) for "misconduct related to their origination and servicing of single family residential mortgages." (Complaint, United States v. Bank of America Corp., No. 12-CV-361 (D.D.C. March 12, 2012), attached as Exh. A to Declaration of Michael M. Maya dated May 22, 2015 ("Maya Decl."), ¶ 1). On April 4, 2012, all parties agreed to settle the matter; the Honorable Judge Rosemary M. Collyer, U.S.D.J., approved the settlement in the form of separate consent judgments against the various defendants. See United States v. Bank of America, 922 F. Supp. 2d 1, 4 (D.D.C. 2013); (Chase Consent Judgment, Bank of America Corp., No. 12-CV-361 (D.D.C. April 4, 2012) ("Consent Judgment"), attached as Exh. B to Maya Decl.). The consent judgment entered against these defendants required, among other

---

[3] Specifically, counts 6-7.

things, that they provide refinancing and other relief to consumers who satisfied eligibility criteria. (Consent Judgment, ¶ 5). Judge Collyer retained jurisdiction to enforce the judgment. (Consent Judgment, ¶ 13).

More recently, in May 2013, Laurence Schneider brought a <u>qui tam</u> action against the defendants in the U.S. District Court for the District of South Carolina. (Complaint, <u>United States ex rel. Schneider v. JPMorgan Chase Bank</u>, No 3:13-CV-1223 (D.S.C. May 6, 2013) ("Schneider Compl."), attached as Exh. D to Maya Decl.). Mr. Schneider is the president of plaintiff S&A and of Real Estate and Finance, Inc., which in turn is the managing member of plaintiffs MRS and 1st Fidelity. (3d Am. Compl., ¶¶ 2-4). In essence, Mr. Schneider's <u>qui tam</u> complaint asserts that the defendants violated the terms of the consent judgment by, among other things, improperly claiming credit for forgiving mortgage debt that they no longer owned. (Schneider Compl., ¶¶ 4-13). Mr. Schneider subsequently moved to have that case transferred to the D.C. Court and marked as related to the prior litigation, pursuant to Judge Collyer's retention of jurisdiction over the consent judgment. (Memorandum in Support of Motion to Transfer Venue, <u>United States ex rel. Schneider</u>, No. 3:13-CV-1223 (May 27, 2014), attached as Exh. H to Maya Decl., at 3). That motion was granted. (Order Granting Motion to Transfer, <u>United States ex rel. Schneider</u>, No. 3:13-cv-1223 (June 19, 2014), attached as Exh. I to Maya Decl.).

In light of the "common questions of law and fact" raised in this complaint and Mr. Schneider's <u>qui tam</u> action, the defendants

now move to have the plaintiffs' case transferred to the D.C. Court "so that the two related cases can be coordinated before a single court." (Defendants' Memorandum of Law in Support of Their Motion to Transfer Venue to United States District Court for the District of Columbia ("Def. Memo.") at 2). The plaintiffs oppose the motion primarily on the grounds that a forum selection clause contained in a purchase agreement between MRS and Chase Home Finance identifies New York as the forum for resolving disputes arising under that agreement. (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Transfer Venue ("Pl. Memo.") at 1, 3-4).

Discussion

    A.  Legal Standard

A district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice," to any district "where [the action] might have been brought." 28 U.S.C. § 1404(a). Congress intended § 1404(a) "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)). District courts have broad discretion over whether to grant a transfer, In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992), and generally engage in a two-part inquiry when deciding such motions, Mattel, Inc. v. Robarb's, Inc., 139 F. Supp. 2d 487, 490 (S.D.N.Y. 2001).

"The court must first determine whether the action sought to

be transferred is one that 'might have been brought' in the transferee court.  Second, the court must determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." Id. at 490 (quoting Wilshire Credit Corp. v. Barrett Capital Management Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)).[4]  Under the second prong of this analysis, courts typically consider a variety of private-interest and public-interest factors.  See Atlantic Marine Construction Co. v. United States District Court for Western District of Texas, __ U.S. __, __ & n.6, 134 S. Ct. 568, 581 & n.6 (2013) (collecting factors).[5]  Weighing these factors is an equitable task for which "[t]here is no rigid formula" and where "no single [factor] is determinative."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

There is, however, an important, recently-articulated caveat to this discussion: "When the parties have agreed to a valid forum-

---

[4] The plaintiffs do not dispute that this case might have been brought in the D.C. Court, so I will forgo that analysis.

[5] Courts in this Circuit generally consider the following factors:

> (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

Reliance Insurance Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56-57 (S.D.N.Y. 2001).

selection clause, a district court should" honor that contractual provision unless there are "<u>extraordinary</u> circumstances unrelated to the convenience of the parties."  Atlantic Marine, __ U.S. at __, 134 S. Ct. at 581 (emphasis added).  Because enforcing forum selection clauses "protects [the parties'] legitimate expectations and furthers vital interests of the justice system," such clauses are to be "given controlling weight in <u>all but the most exceptional cases</u>."  Id. (emphasis added) (quoting <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).  Accordingly, consideration of the defendants' present motion must begin with an analysis of the significance of the forum selection clause contained in the agreement between MSR and Chase Home Finance.[6]

    B.   <u>The Forum Selection Clause</u>

"When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases [] 'the interest of justice' is served by holding the parties to their bargain."  <u>Atlantic Marine</u>, __ U.S. at __, 134 S. Ct. at 583.  However, the defendants raise two issues that complicate the application of <u>Atlantic Marine</u> to this case.  First, the defendants argue that the forum selection clause only governs MRS' breach of

---

[6] The agreement between MRS and Chase Home Finance provides that "all disputes arising [there]under shall be submitted to . . . the courts of competent jurisdiction, state and federal, in the State of New York," and that the agreement "shall be construed in accordance with the laws of the State of New York."  (Mortgage Loan Purchase Agreement ("MLPA"), attached as Exh. O to Maya Decl., § 15).

contract claim. (Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Transfer Venue to United States District Court for the District of Columbia ("Def. Reply") at 4). Second, S&A and 1st Fidelity are not parties to the agreement that contains the forum selection clause, and there is no allegation that they entered into other contracts with the defendants that include similar clauses. (Def. Reply at 3). The defendants conclude that, in light of these considerations, Atlantic Marine does not control here. (Def. Reply at 3). Whatever the intuitive appeal of the defendants' argument, it lacks support in the caselaw.

As an initial matter, it is not entirely certain that the forum selection clause governs only MRS' breach of contract claim. According to the Second Circuit, "when ascertaining the applicability of a contractual provision to particular claims, [courts] examine the substance of those claims, shorn of their labels." Phillips v. Audio Active Ltd., 494 F.3d 378, 388 (2d Cir. 2007). As such, the focus of a court's inquiry should be on "factual allegations rather than on the causes of action asserted." Id. at 388-89. Whether a forum selection clause covers a particular claim "is a contractual question that requires [] courts to interpret the clause," New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 33 (2d Cir. 1997), pursuant to the law indicated in the agreement's choice of law clause, Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 517 (S.D.N.Y. 2012). Under New York law, the forum selection clause in the MLPA likely covers more than MRS' breach of contract action. See Montoya v. Cousins Chanos Casino,

LLC, No. 651353/11, 2012 WL 118475, at *5 (N.Y. Sup. Ct. Jan. 12, 2012) (interpreting forum selection clause covering claims "arising under" contract and observing that, "[b]ecause of the strong public policy favoring enforcement of forum selection clauses, courts have construed these clauses broadly to encompass tort claims brought in relation to the contract and/or which arise out of the business relationship"). As a factual matter, MRS' claims for conversion, tortious interference, fraudulent inducement, negligent misrepresentation and slander of title all arise from the business relationship created by the MPLA (see, e.g., 3d Am. Compl., ¶¶ 165, 172, 177, 186, 196; see also Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint at 1 ("Plaintiffs [] assert a laundry list of quasi-contractual and tort claims . . . . These claims are wholly duplicative of Plaintiffs' breach of contract claims . . . .")), and could, therefore, come under the forum selection clause.[7]

As for S&A and 1st Fidelity's claims, while the plaintiffs cite authority suggesting that non-parties to a contract may

---

[7] Even the plaintiffs' civil RICO claim depends on the existence of, and negotiations surrounding, the MLPA and the resulting sale of mortgage loans to MRS (see 3d Am. Compl., ¶¶ 204-05, 212, 215-16), and it would be no stretch to consider this a dispute arising under the MLPA, see Crescent International, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988) (per curiam) (finding civil RICO claim covered by forum selection clause in real estate sale agreement that required "any litigation upon [the agreement's] terms" to be brought in Florida); accord Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1359-61 (2d Cir. 1993) (finding platinffs' RICO claims covered by forum selection clause). Accordingly, were it not for the presence of S&A and 1st Fidelity in this litigation, the forum selection clause might govern the entire case.

nonetheless enforce a forum selection clause against the contract's signatories, (see Plaintiffs' Sur-Reply in Opposition to Defendants' Motion to Transfer ("Pl. Reply") at 2), those cases are inapposite.  They involve situations where a non-party sought to litigate claims related to the contract containing the relevant clause.  See Freeford Ltd. v. Pendleton, 53 A.D.3d 32, 857 N.Y.S.2d 62 (1st Dept. 2008), and Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration International, Inc., 198 F.3d 88 (2d Cir. 1999).  However, I cannot agree with the defendants' contention that Atlantic Marine does not control here simply because S&A and 1st Fidelity are not parties to the MLPA.  (See Def. Reply at 3).

For one, § 1404(a) only authorizes courts to transfer an entire case, Wyndham Associates v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968); see also Ahmed v. T.J. Maxx Corp, 777 F. Supp. 2d 445, 450 (E.D.N.Y. 2011), so any assessment of the defendants' motion must necessarily account for the forum selection clause, as it is relevant to the case as a whole.[8]  Moreover, any benefits gained by transferring this case must be balanced against the strong policy favoring the enforcement of forum selection clauses.  See Paduano v. Express Scripts Inc., 55 F. Supp. 3d 400, 434-35 (E.D.N.Y. 2014) ("[T]he efficiency and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses

---

[8] A court may sever a case and then transfer the severed matter, Wyndham Associates, 398 F.2d at 618, but the defendants have not suggested that S&A and 1st Fidelity's claims should be severed.

10

agreed to by [the parties].").[9]

Careful review of both the Supreme Court's opinion in Atlantic Marine and precedent from this Circuit post-dating that decision convinces me that the MLPA's forum selection clause controls here, notwithstanding the presence of S&A and 1st Fidelity.  In Atlantic Marine, the Supreme Court explained that a court's assessment of a motion to transfer under § 1404(a) when the parties are bound by a forum selection clause changes in two ways that are relevant to the present discussion.  Atlantic Marine, __ U.S. at __, 134 S. Ct. at 581-82.  First, the choice of forum made by a plaintiff defying a forum selection clause is not entitled to the usual deference, as that party already exercised its "venue privilege" when it negotiated the relevant clause.  Id.  Second, a court should not consider arguments about the parties' private interests, as those arguments are effectively waived when the parties agree in advance to litigate in a particular forum.  Id. at 582.

Here, rather than defying the forum selection clause, MRS filed suit pursuant to its terms.  As such, the plaintiffs' choice of forum must be afforded the normal, or perhaps even greater weight.  Moreover, because the defendants here seek to avoid enforcement of a valid forum selection clause, their arguments about the inconveniences they will face cannot be considered.  Even

---

[9] And in any case, the private benefits of transfer are most likely to flow primarily to the party seeking to avoid enforcement of the forum selection clause, and the Supreme Court has stated that courts should decline to consider that party's interests.  See Atlantic Marine, __ U.S. at __, 134 S. Ct. at 582; Paduano, 55 F. Supp. 3d at 435.

11

though the defendants did not agree in advance to litigate with S&A and 1st Fidelity in New York, they have not shown that there is something uniquely inconvenient about defending those claims here. Instead, the defendants' arguments about inconvenience focus on the case as a whole.  (See Def. Memo. at 14-16).  The problem with that position is that it fails to in any way account for the fact that, at least as to those claims involving MRS, they conceded the convenience of litigating in this forum when they entered into the MLPA.

Although I am unaware of another case in this Circuit that both presents an analagous issue and post-dates Atlantic Marine, there are helpful guideposts.  First, in Tulepan v. Roberts, No. 14 Civ. 8716, 2014 WL 6808313 (S.D.N.Y. Dec. 3, 2014), the defendants, notwithstanding a forum selection clause that required the case to be litigated in New York, sought to have the case transferred to Florida where one of the plaintiffs had filed a related suit.  Id. at *1.  The court denied the defendants' request, concluding that none of the public interest factors, including the existence of the "factually related" suit pending in another district, was sufficient to avoid enforcement of the forum selection clause.  Id. at *2-3.  Second, in Allianz Global Corporate & Specialty v. Chiswick Bridge, Nos. 13 Civ. 7559, 13 Civ. 7565, 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014), two defendants in a multi-defendant case moved on the basis of forum non conveniens to dismiss the claims against them, arguing that a valid forum selection clause required litigation to be pursued in Tokyo.  Id. at 1.  Ignoring the

plaintiff's claims that requiring it to litigate "closely intertwined" matters in two forums would be "unduly costly and prejudicial," the court enforced the forum selection clause and remarked that this promoted the public interest. Id. at *3-4. Circumstances that other courts have found sufficiently extraordinary to warrant defying a forum selection clause are simply not present here. See, e.g., Credit Suisse AG v. Appaloosa Investment Ltd. Partnership, No. 15 Civ. 3474, 2015 WL 5257003, at *11 (S.D.N.Y. Sept. 9, 2015) (transferring case despite forum selection clause where case created "palpable conflict" with pending bankruptcy action and was in "direct conflict with defendants' status and rights under the Bankruptcy Code").

In sum, this case does not present considerations that would allow me to ignore the Supreme Court's command that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atlantic Marine, __ U.S. at __, 134 S. Ct. at 581 (alteration in original) (quoting Stewart, 487 U.S. at 33). That two (or even eight) of the nine causes of action alleged are not covered by the clause is simply not relevant here. Adopting the defendants' position might allow strategic litigants to avoid enforcement of forum selection clauses by joining to its suit other parties not subject to the clause. See In re Rolls Royce Corp., 775 F.3d 671, 685 (5th Cir. 2014) (Jones, J., concurring) (characterizing as "highly unlikely" that the Supreme Court intended Atlantic Marine to control "only when one party sues one other party" and noting that "any clever party to a lawsuit can

13

readily join another party . . . in an attempt to avoid the forum selection clause"). Because I conclude that <u>Atlantic Marine</u> controls the present motion, the only question that remains is whether the public interest factors the defendants cite satisfy their burden of showing that this is one of those "unusual cases" in which enforcement of a forum selection clause may be avoided. <u>See</u> <u>Atlantic Marine</u>, __ U.S. at __, 134 S. Ct. at 582-83.

C. <u>Public Interest Factors</u>

"Public-interest factors may include 'the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" <u>Atlantic Marine</u>, __ U.S. at __ n.6, 134 S. Ct. at 581 n.6 (alteration in original) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241 n.6 (1981)).[10]  In addition, courts in this Circuit often consider "trial efficiency and the interests of justice" in the context of their public interest analyses. <u>Spiciarich v. Mexican Radio Corp.</u>, No. 14 Civ. 9009, 2015 WL 4191532, at *6, 10 (S.D.N.Y. July 10, 2015).

1. <u>Forum Familiarity with the Law</u>

The defendants concede that New York common law applies to the

---

[10] Neither party argues that "court congestion" is a concern in this case, so I will not consider this factor.  Furthermore, only the plaintiffs have argued that there is a "local interest" here, stating that New York, as the place where defendants' are headquartered and where the MLPA is deemed to have been made, has an interest in resolving this dispute locally.  (Pl. Memo. at 8). While that argument is perhaps a stretch, the defendants have made no contrary showing that the District of Columbia has an interest in this case that would favor transfer.

14

plaintiffs' claims. (Def. Memo. at 17). Nevertheless, they argue that the more relevant consideration here is this Court's lack of familiarity with the consent judgment approved by Judge Collyer. I do not question Judge Collyer's "unparalleled expertise with respect to the interpretation and application of those voluminous and complex settlements" (Def. Memo. at 17), and I do not doubt that she is "best suited to interpret the terms of the Consent Judgment . . . because [she] presided over the settlement," United States v. Bank of America, 922 F. Supp. 2d 1, 5 (D.D.C. 2013) (Collyer, J.), aff'd sub nom. United States v. Bank of America Corp., 753 F.3d 1335 (D.C. Cir. 2014). However, the defendants greatly exaggerates the extent to which that expertise should weigh in favor of transferring this case. For one, the consent judgment only figures centrally in the plaintiffs' civil RICO claim, i.e., in one of the plaintiffs' nine causes of action. More importantly, one court's having to interpret the terms of a consent judgment entered by a different court is not extraordinary. Cf. id. at 6 (observing that construing a consent decree is simply a matter of contract interpretation). Indeed, the Honorable Jesse M. Furman, a judge in this district, has assessed claims that implicate the consent judgments, albeit with assistance from Judge Collyer. See United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 604 (S.D.N.Y. 2013) ("[Judge Collyer] left it to this Court to interpret the Amended Complaint in this case and to decide whether the Government's claims here are barred by the consent judgment.").

Because the majority of the plaintiffs' claims are diversity

15

actions governed by New York common law, as far as the defendants' position is concerned, this factor is, at best, neutral. Accordingly, it does not favor transfer.

### 2. Trial Efficiency and the Interests of Justice

The defendants argue at length that this case should be transferred to the D.C. Court so as to avoid "duplicative litigation" and the attending strain on judicial resources. (Def. Memo. at 10).[11] According to the defendants, the plaintiffs' case "overlaps substantially" with Mr. Schneider's pending qui tam action. (Def. Reply at 8). The plaintiffs meanwhile argue that the "core" of Mr. Schneider's suit "has nothing whatsoever" to do with their claims here. (Pl. Memo. at 4). Fortunately, resolving the present dispute does not require crediting either position because even the defendants' characterization of the overlap does not establish that transfer is warranted.

The defendants have not cited any post-Atlantic Marine authority from this Circuit to support the proposition that the mere pendency of a related matter in another court is sufficiently unusual to avoid the enforcement of a valid forum selection clause. The two cases from the District of New Jersey that the defendants cite are unhelpful, as they involve factual circumstances not present here. See Howmedica Osteonics Corp. v. Sarkisian, Civ. A. No. 14-3449, 2015 WL 1780941, at *3 (D.N.J. April 20, 2015)

---

[11] Pursuant to the Supreme Court's admonition in Atlantic Marine, I need not consider the defendants' arguments about the burden they will face in litigating in two separate courts. See Atlantic Marine, __U.S. at __, 134 S. Ct. at 582.

(finding that enforcing forum selection clauses would result in "palpable . . . injustice" as it would require either severing case that "must be tried as one case" or "disregard[ing] the law of jurisdiction and venue"); Samuels v. Medytox Solutions, Inc., Civ. A. No. 13-7212, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (case involving "conflicting -- but independently valid -- forum selection clauses").  The Fifth Circuit's decision in In re Rolls Royce Corp., 775 F.3d 671, is not only distinguishable, but also lends as much support to the plaintiffs' position as to the defendants'.  There the court confronted a situation where, "to transfer the claims of the [defendant covered by the forum selection clause], the [] court would first have to sever those claims from the claims" against the defendants not covered by a forum selection clause.  Id. at 679-80.  While the decision includes some passages that question the applicability of Atlantic Marine in multi-defendant cases where one defendant demands transfer pursuant to a forum selection clause, e.g. id. at 679, ultimately the court enforced the forum selection clause, requiring the litigation to proceed in separate fora.  Id. at 683.

Requiring the defendants to defend this case and Mr. Schneider's qui tam action in separate courts might not be the most efficient outcome for the parties or the federal judiciary, but that inefficiency does not make this a sufficiently extraordinary case.  Although the defendants hint at the possibility of inconsistent judgments (Def. Memo. at 12), they have not argued that they are entitled to a stay in this case while Mr. Schneider's

17

action is pending. There is no indication that allowing the cases to proceed simultaneously will result in any substantive unfairness. If the defendants believe that are being subjected to unnecessarily duplicative discovery requests, they should make an appropriate motion for relief. The contract they signed requires them to litigate this case in New York.

Conclusion

For the foregoing reasons, the defendants' motion to transfer (Docket No. 42) is denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
October 28, 2015

Helen D. Chaitman, Esq.
Lance Gotthoffer, Esq.
Chaitman LLP
465 Park Ave.
New York, NY 10022

Robert D. Wick, Esq.
Michael M. Maya, Esq.
Covington & Burling, LLP
One City Center
850 10th St., NW
Washington, DC 20001

Michael C. Nicholson, Esq.
Covington & Burling LLP
620 Eighth Ave.
New York, NY 10018-1405