UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - -
S&A CAPITAL PARTNERS, INC.,                     :
MORTGAGE RESOLUTION SERVICING,    :   No. 15-cv-00293-LTS-JCF
LLC, and 1ST FIDELITY LOAN                        :
SERVICING, LLC,                                              :
                    *Plaintiffs*,                    :
                                           :
                  - *v.* -      :

JPMORGAN CHASE BANK, N.A., CHASE  :
HOME FINANCE, LLC, and JPMORGAN   :
CHASE & CO.,                                                     :
                    *Defendants*.      x
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - -

## DECLARATION OF PHIL VERDELHO

      PHIL VERDELHO, being duly sworn deposes and says:

      1.     I am over eighteen (18) years of age. I make this declaration based on my personal knowledge, except as to those matters which are stated upon information and belief. As to those matters, my knowledge is based on my understanding of JPMorgan Chase Bank, N.A. ("JPMC") electronic discovery processes, my review of pertinent records, my discussions with JPMC employees, and my years of experience at JPMC.

      2.     I am employed by JPMC as an Executive Director for Electronic Discovery Platform Services ("eDPS"). I submit this declaration in support of the Defendants in this case.

      3.     As an Executive Director for Electronic Discovery Platform Services, my job responsibilities include, but are not limited to: (a) serving as the primary e-Discovery Manager, which includes providing enterprise guidance, strategy, and services for the management of electronically stored information ("ESI") preservation, collection, and disposition across formats in a manner that is defensible, sustainable, and aligned with industry best practices; (b) utilizing the technologies that support JPMC's eDPS hosted archival data warehouse to meet various

regulatory and litigation reporting and retention requirements; and (c) managing a staff of IT professionals who are dedicated to supporting JPMC's e-Discovery electronic technology requirements and who respond to requests for ESI, including emails, to comply with e-discovery obligations in litigation.

4.  I am familiar with the policies and procedures implemented and implicated in JPMC's efforts to locate, restore and provide for review archived electronic data, including electronic mailboxes and emails of current and former employees.[1]

5.  The information contained in this declaration is based upon information and belief, and on my general knowledge of JPMC's business operations.

*JPMC's General Document Retention and Destruction Policy*

6.  Upon information and belief, in general, all employees' mailboxes, including all emails contained in those mailboxes, are located on email servers. Those servers are backed up on magnetic tapes ("the Backup Tapes"), or spinning media on a regular basis. This backup is done according to JPMC's standards to meet operational support requirements and it captures a "snapshot" of (1) emails in an employee's mailbox, and (2) "sent items" folder at the date and time that the backup was created. Due to the very "snapshot" nature of this process, if an email was sent or received on a particular day, and deleted on that same day prior to the next scheduled server backup, that particular email may not be captured by the Backup for the server.

7.  Upon information and belief, the primary purpose of the Backup Tapes, which provide a copy of electronic data at a specific point in time, is to serve as a secondary source of recovery of that data in the event of a system problem or disaster, and not for retrieving particular emails in the ordinary course of business.

*Procedure for Retrieving Emails and Electronic Calendars on Backup Tapes*

8.  Upon information and belief, once a custodian's mailbox is recreated, email and calendar appointments must be extracted to a software platform and duplications removed.

---

[1] The terms "employee" and "custodian" are used synonymously throughout this declaration.

JPMC can then run search terms to retrieve potentially relevant emails and calendar appointments. Depending upon the number of emails and calendar appointments in the custodian's mailbox, searches can take anywhere from several hours to several days. This does not include the time necessary to review potentially relevant emails for responsiveness, relevance and/or any applicable privilege.

*Costs Incurred After Restoration Is Complete*

9. Upon information and belief, after emails are restored and hosted in a reviewable platform, they need to be culled for review purposes. To do so, JPMC uses certain search terms over the universe of stored documents to select certain emails with those particular search terms in the source email or attachments. JPMC then creates a subset of these documents for further review.

10. Upon information and belief, the cost of reviewing the restored set of emails, and attachments with the pre-selected search terms, will be based upon the number of documents bearing those keywords.

11. Upon information and belief, once the de-duplication process is complete and search terms have been applied, JPMC then conducts a substantive review of the documents. The remaining documents (or "hits" based on the application of search terms) require extensive review because the "hits" will contain "false positives" (irrelevant information, privileged information, and confidential information) relating to issues, employees, customers and business practices not involved in this litigation.

12. Upon information and belief, depending upon the volume of documents that remain after the de-duplication process and application of search terms, JPMC may have to send the documents to an outside, third-party vendor for a substantive, managed review of the documents.

*Cost and Burden of Restoration of Requested Information Relating to Email and Associated Costs*

13. Upon information and belief, I am advised that Plaintiffs have requested emails from 26 JPMC employees, for the time period January 1, 2008 through December 31, 2015 (95 custodian-months of data), and application of at least 314 unique search terms to those documents. To produce emails, JPMC would first have to retrieve all of the emails of those custodians for the requested period of time. JPMC does not retain emails stored by subject matter area.

14. Upon information and belief, JPMC will utilize an example of one custodian, Patrick "Mike" Boyle, for the period from January 1, 2008 through December 31, 2015, as a means of providing the Court with a limited example of the costs JPMC may incur if it were to comply with Plaintiffs' requests. Additionally, costs can vary widely depending upon the multiple sources from which JPMC would need to collect data given this date range, so this example is not necessarily a scalable estimate. Data on backup tapes, for example, is significantly more labor-intensive to restore compared with data in online systems.

15. Upon information and belief, there are more than 1.4 million pre-keyword search documents for Mr. Boyle for the period in question. The estimated cost associated with restoration of these documents is $1,375.00.

16. Upon information and belief, when restoration is completed, third-party processors load the restored emails in an internal software platform and remove duplications.

17. Upon information and belief, after the de-duplication process, the application of the 314 search terms Plaintiffs have requested leaves 661,161 documents from Mr. Boyle with search term hits in the document or an attachment. Thus, after the application of Plaintiffs' search terms, JPMC or a third-party vendor would have to review 661,161 in the first pass review for this custodian.

18. Upon information and belief, given the high volume of documents, JPMC will need to send the documents to an outside, third-party vendor for a managed review. The outside vendor cost for loading documents onto a hosting platform would be approximately $11,000 (plus processing and storage costs if applicable). The vendor cost for reviewing the documents

for responsiveness, confidentiality and privilege would be approximately $264,464.40 for this custodian.

19. Upon information and belief and based upon my knowledge of the electronic discovery process, a skilled reviewer is able to make about 500 review decisions in an eight-hour day. Thus, it would require approximately 1322 (eight-hour) days for a skilled reviewer to conduct a full linear review of documents for responsiveness, relevance and/or any applicable privilege. If an outside vendor is used for the initial review, JPMC counsel conducts a secondary "spot-check" review of the remaining documents to ensure responsive, relevant production does not contain privileged material. Assuming the vendor's first-pass review narrows the documents to approximately 119,008.98 (a 18% hit rate), the secondary "quality control" review by JPMC's counsel is estimated to cost approximately $658,119.65.

20. Upon information and belief, based on the foregoing estimates, the estimated total cost of producing Mr. Boyle's documents alone, for the period from January 1, 2008 through December 31, 2015, using Plaintiffs' search terms, would be approximately 934,959.05

21. Upon information and belief, as part of its efforts to identify responsive documents, JPMC has previously employed a set of targeted search terms designed to capture documents relevant to the commercial relationship between Plaintiffs and JPMC, which yielded a total of 27,052 potentially responsive documents from Mr. Boyle after the de-duplication process.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on June 10th, 2016.

Phil Verdelho