UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MORTGAGE RESOLUTION SERVICING, LLC,:   15 Civ. 0293 (LTS) (JCF)
1ST FIDELITY LOAN SERVICING, LLC,  :
and S&A CAPITAL PARTNERS, INC.,    :      MEMORANDUM
                                   :      AND ORDER
                Plaintiffs,        :
                                   :
     - against -                   :
                                   :   ┌─────────────────────────────┐
JPMORGAN CHASE BANK, N.A., CHASE    :   │ USDS SDNY                   │
HOME FINANCE LLC, and JPMORGAN      :   │ DOCUMENT                    │
CHASE & CO.,                        :   │ ELECTRONICALLY FILED        │
                                   :   │ DOC #: _____    │
                Defendants.        :   │ DATE FILED: 7/14/16         │
- - - - - - - - - - - - - - - - - -:   └─────────────────────────────┘
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     In this action, which centers on residential mortgage loans

that the plaintiffs purchased from the defendants, the plaintiffs

allege a number of contract and tort claims, as well as a civil

claim under the Racketeering Influenced Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 et seq.[1]  The plaintiffs now move for an

order compelling the defendants to respond to a number of requests

for production ("RFPs").  In the process, they ask the Court to

define the current scope of discovery in this action, particularly

as it relates to the RICO claim in this case and the allegations in

a separate, but similar, qui tam action against these defendants in

the United States District Court for the District of Columbia

(United States ex rel. Schneider v. J.P. Morgan Chase Bank, No. 14-

cv-1047 (D.D.C. filed May 6, 2013)).  The defendants, for their

part, oppose the motion to compel and seek a protective order

─────────────────────

     [1] For the purposes of this motion, it is unnecessary to
distinguish among the different plaintiff entities or different
defendant entities, so I shall refer to each group collectively.

staying discovery on the RICO claims until their pending motion to dismiss is decided.  The plaintiffs' motion is granted in part and denied in part; the defendants' motion is granted.

<u>Background</u>

The plaintiffs purchase residential mortgages "which are not performing according to their original terms." (Third Amended Complaint ("Complaint"), ¶ 11).  This case relates to a pool of thousands of such loans that the plaintiffs purchased from the defendants in 2009. (Complaint, ¶ 1; Plaintiffs' Memorandum of Law in Support of Motion to Compel and Define Scope of Discovery ("Pl. Memo.") at 7-8).  The plaintiffs assert that certain representations and warranties that the defendants made about the loans -- that the information provided about each loan was "true and correct in all material respects," that each loan complied with applicable laws, and that the defendants actually owned all of the loans that were sold -- were false at the time the parties' agreement was executed and that the defendants further breached the agreement after its execution by, for example, representing to borrowers that the defendants still owned certain loans and then collecting and retaining payments on those loans. (Complaint, ¶¶ 43, 56, 59-60, 68, 85-86; Pl. Memo. at 8-9).

In addition, the Complaint alleges the defendants improperly forgave loans or released liens connected with the purchased loans. The so-called National Mortgage Settlement, approved in April 2012, required the defendants to provide billions of dollars in consumer relief, including loan modifications, to borrowers whose loans it

owned or serviced. (Complaint, ¶¶ 97, 100). According to the plaintiffs, in order to comply with that settlement, the defendants forgave thousands of mortgage loans on three separate occasions: September 13, 2012, December 13, 2012, and January 13, 2013. (Complaint, ¶¶ 103-104). However, some of the forgiven loans were owned by the plaintiffs. (Complaint, ¶ 105; Pl. Memo. at 9-10). Further, a November 2013 settlement resolving claims by various federal agencies and states arising out of the residential market backed securities market, characterized in the papers as the RMBS Settlement, again required the defendants to provide billions of dollars in consumer relief. (Complaint, ¶ 146; Pl. Memo. at 10). The defendants allegedly claimed credit under the RMBS Settlement for indebtedness owed by borrowers whose loans were sold to the plaintiffs. (Complaint, ¶ 147; Pl. Memo. at 10). The plaintiffs also allege that in order to avoid "anti-blight" responsibilities, the defendants "releas[ed] liens on properties that served as collateral for loans" that the defendants had sold to the plaintiffs. (Complaint, ¶¶ 132-140; Pl. Memo. at 10). Some of these were released in connection with the "Pre-DOJ Lien Release Project," which the defendants allegedly established in October 2013 in order to excise from their books loans that would otherwise require compliance with anti-blight programs. (Complaint, ¶¶ 134, 140).

The contract and commercial tort claims in this action concern, primarily, (1) the alleged misrepresentations and omissions by the defendants about loans sold to the plaintiffs and

(2) the defendants' practice of retaining payments made on loans, forgiving loans, or releasing liens on loans sold to the plaintiffs. (Complaint, ¶¶ 151-152, 157, 162, 168-169, 172-173, 177-181, 186, 194). The RICO claim relates to these or similar misrepresentations and misdeeds insofar as they were allegedly intended to induce governmental entities to believe, falsely, that the defendants had fulfilled their consumer relief obligations under the National Mortgage Settlement and the RMBS Settlement. (Complaint, ¶¶ 206, 210, 212).

Meanwhile, in Schneider, plaintiff-relator Laurence Schneider, the principal of the three plaintiff companies here, filed a second amended complaint alleging violations of the federal False Claims Act, 31 U.S.C. § 3729, and various state equivalents. (Second Amended Complaint, U.S.A. ex rel. Schneider v. J.P. Morgan Chase Bank ("Schneider Complaint"), attached as Exh. E to Declaration of Christian J. Pistilli dated June 13, 2016 ("Pistilli Decl."), ¶¶ 1-2, 305-419). The plaintiff-relator alleges that, after the National Mortgage Settlement was executed and a Consent Judgment entered, the defendants sent numerous loan-forgiveness letters to borrowers and released numerous liens, purportedly pursuant to that settlement. (Schneider Complaint, ¶¶ 11-12, 14). A number of these letters forgave loans or released liens on mortgage loans sold to Mr. Schenider's companies (the plaintiffs here). (Schneider Complaint, ¶¶ 11, 14-15). These and other practices did not meet the servicing standards required by the National Mortgage Settlement, and allowed the defendants "to take credit for

4

valueless charged-off and third-party owned loans" rather than applying the standards required under the National Mortgage Settlement to offer relief "to properly vetted borrowers who could have applied for and benefitted from the relief and modification programs." (<u>Schneider</u> Complaint, ¶¶ 17-19). In addition, the complaint alleges that the defendants failed to comply with the Department of the Treasury's Home Affordable Mortgage Program ("HAMP") -- a program that provided certain borrowers the opportunity to modify certain mortgage loans -- by failing to solicit borrowers to apply for the program and failing to abide by its servicing requirements. (<u>Schneider</u> Complaint, ¶¶ 39, 118, 181, 190-191, 198-199). The HAMP allegations relate particularly to loans known as Recovery One or RCV1 loans, which are "a collection of various federally related mortgage loans that have been charged off by [the defendants] and whose documentation has been corrupted, ignored[,] or allowed to fall into disarray." (<u>Schneider</u> Complaint, ¶ 172). According to the plaintiff-relator, the defendants violated the False Claims Act when they certified to federal and state governments that they were in compliance with the standards required by the National Mortgage Settlement and HAMP. (<u>Schneider</u> Complaint, ¶¶ 1-2).

The defendants have filed motions to dismiss in both this action and in <u>Schneider</u>. While the motion in <u>Schneider</u> seeks dismissal of the entire complaint on both procedural and substantive grounds (Defendants' Memorandum in Support of Their Motion to Dismiss Relator's Second Amended Complaint, attached as

5

Exh. F to Pistilli Decl.), the motion in this case argues only that the tort and RICO claims should be dismissed: the tort causes of action because they are both duplicative of the breach of contract claims and insufficiently pled, and the RICO claim because it fails to allege both the existence of a valid RICO enterprise and a pattern of continued criminal activity (Defendants' Memorandum of Law in Support of Their Motion to Dismiss Counts Four through Nine of Plaintiffs' Third Amended Complaint ("Motion to Dismiss RICO Claims")).

The plaintiffs now move to compel the defendants to produce documents responsive to certain requests for production. The plaintiffs divide these requests into two categories: "(1) [d]ocuments that relate to the qui tam [c]ase or that [the] [d]efendants claim are beyond the scope of the breach of contract claims . . . ; [and] (2) [d]ocuments [the] [d]efendants claim they cannot produce unless [the] [p]laintiffs provide them with a list of loans that [the] [d]efendants sold."[2] (Pl. Memo. at 11). The defendants seek a protective order staying discovery as to the RICO claim until their motion to dismiss is decided (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel and Define Scope of Discovery and in Support of Defendants' Cross-Motion for Protective Order ("Def. Memo.") at 12-17), and oppose the motion to compel on various grounds (Def. Memo. at 9-11, 17-19).

---

[2] For convenience, I will refer to these two groups of documents as "Category One" and "Category Two" documents.

<u>Discussion</u>

    A.   <u>Legal Standard</u>

    The amendments to Rule 26(b)(1) allow discovery of

        any nonprivileged matter that is relevant to any party's
        claim or defense and proportional to the needs of the
        case, considering the importance of the issues at stake
        in the action, the amount in controversy, the parties'
        relative access to relevant information, the parties'
        resources, the importance of the discovery in resolving
        the issues, and whether the burden or expense of the
        proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.  <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978).  However, as the advisory committee notes, the proportionality factors have been restored to their former position in the subsection "defining the scope of discovery," where they had been located prior to the 1993 amendments to the rules.  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.  Thus, the amended rule is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality before ordering production of relevant information, as was the practice prior to 1993.  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.  The burden of demonstrating relevance remains on the party seeking discovery, but the newly-revised rule "does not place on the party seeking discovery the burden of addressing all proportionality considerations."  <u>Id.</u>  In general, when disputes are brought before the court, the parties' responsibilities remain

7

the same as they were under the previous iteration of the rules, so that the party resisting discovery has the burden of showing undue burden or expense.  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment; see also Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery." (quoting Trilegiant Corp. v. Sitel Corp., 275 F.R.D. 428, 431 (S.D.N.Y. 2011))).  Moreover, information still "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

"If the evidence sought is relevant, 'the burden is upon the party seeking non-disclosure or a protective order to show good cause'" by "demonstrating a particular need for protection." Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015) (first quoting Penthouse International, Ltd. v. Playboy Enterprises, 663 F.2d 371, 391 (2d Cir. 1981), and then quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).  "Although the burden is on the movant to establish good cause for the entry of a protective order, the court ultimately weighs the interests of both sides in fashioning an order." Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71 (S.D.N.Y. 2010).

   B.   Category One Documents

   Category One documents would be responsive to fifteen of the plaintiffs' RFPs.[3]  The defendants object to producing documents

---

[3] Plaintiffs' RFP Nos. 5, 7, 26-27, 29, 31, 33-41.  (Pl. Memo. at 22; Appendix ("App.") 1, attached as Exh. to Pl. Memo.; Def. Memo. at 17 n.20; Plaintiffs' Reply Memorandum of Law in Further

that are relevant only to the <u>qui tam</u> action, only to the RICO claim, or only to both of those claims.  (Def. Memo. at 9, 12). That is, they object to producing documents that are not relevant to the breach of contract and tort claims.[4]  The defendants advance two arguments: first, that requests for production of documents relevant only to the <u>qui tam</u> action are inappropriate in this separate action; and second, that discovery relevant only to the RICO claim should be stayed in light of the pending motion to dismiss.

       1.   <u>Documents Relevant to Qui Tam Action</u>

The plaintiffs contend that "this Court has ordered the parties to coordinate discovery in this case with discovery in the <u>qui tam</u> case" in order "to avoid duplication."  (Pl. Memo. at 14-15).  Therefore, according to the plaintiffs, the defendants should produce discovery even if it relates only to claims not included in this action.  This argument overreaches.  To be sure, the Honorable Laura Taylor Swain, U.S.D.J., in denying the plaintiffs' motion to transfer this action to the District of Columbia, "encouraged" the

---

Support of Motion to Compel and Define Scope of Discovery and in Opposition to Defendants' Cross Motion for a Protective Order ("Pl. Reply") at 10).

   [4] The plaintiffs state that the defendants refuse to produce discovery "that [the] [d]efendants claim [is] beyond the scope of the breach of contract claims." (Pl. Memo. at 11). As I read the defendants' submission, they have not objected to producing discovery that might be relevant only to the plaintiffs' common law tort claims. (Defendants' Reply Memorandum of Law in Support of Their Cross-Motion for Protective Order ("Def. Reply") at 2). As they have argued in their motion to dismiss that each of the tort claims is duplicative of the breach of contract claims, however (Motion to Dismiss RICO Claims at 14-16, 18, 20-21), they presumably find this to be a distinction without a difference.

parties "in the interests of efficient pre-trial management . . .
to undertake efforts to coordinate informally discovery of common
issues of fact, insofar as feasible, that may arise in the [False
Claims Act] action pending in D.C." Mortgage Resolution Servicing
LLC v. JPMorgan Chase Bank, N.A., No. 15 Civ. 293, 2015 WL 9413881,
at *2 (S.D.N.Y. Dec. 22, 2015).  However, that is not the same as
ordering the defendants to produce documents in this action that
are relevant only to the qui tam action, especially as Judge Swain
found that the two cases were not sufficiently intertwined to
counsel in favor of transfer. See id. at *1-2.

        Nor is it accurate that the defendants "opened the door" to
this discovery. (Pl. Memo. at 19-20).  As a general matter, I am
unaware of any rule (and the plaintiffs have cited none) indicating
that when a party asks for production of certain categories of
information (or even produces such information), it is prohibited
from arguing that similar discovery sought by the other party is
not relevant. Cf. State Farm Mutual Automobile Insurance Co. v.
Fayda, No. 14 Civ. 9792, 2015 WL 7871037, at *6 (S.D.N.Y. Dec. 3,
2015) (co-operating in discovery to produce documents in response
to request is not concession that documents are relevant).
Moreover, a number of the defendants' requests for production that
the plaintiffs cite as pertaining to the qui tam case are also
relevant to the RICO claim in this case (which I discuss below),
such as requests seeking communications with governmental
authorities related to the allegation that the defendants' conduct
caused the plaintiffs "to face the ire of governmental entities,"

or documents related to the defendants' alleged violations of the
National Mortgage Settlement and the RMBS Settlement. (Complaint,
¶¶ 145-147; Defendants' First Request for Production of Documents
to Plaintiffs S&A Capital Partners, Inc., Mortgage Resolution
Servicing, LLC, and 1st Fidelity Loan Servicing, LLC, attached as
Exh. Q to Pistilli Decl., at 8).  That is, these requests do not
appear to indicate that the defendants seek discovery in this case
relevant only to the Schneider action.

This does not mean, however, that the defendants' position on
the plaintiffs' requests for production succeeds.  Because many of
the fifteen requests for production at issue are broadly written,
apparently to encompass documents relevant to all claims at issue
in this case as well as in the Schneider litigation, they often
encompass documents that are relevant mainly to the plaintiffs
contract and tort claims.  As I noted in a prior opinion:

> The allegation that ties the plaintiffs' breach of
> contract, tort, and civil RICO causes of action together
> is that the defendants, after selling mortgage loans to
> the plaintiffs, released liens securing those loans,
> purported to forgive debt on mortgages they sold, and
> accepted and retained payments on loans they no longer
> owned.

Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.,
No. 15 Civ. 293, 2015 WL 6516787, at *1 (S.D.N.Y. Oct. 28, 2015)
(footnote omitted).[5]  Documents focused on the loans that the
defendants sold to the plaintiffs are relevant to "the private,

---

[5] That opinion denied the defendants' motion to transfer this
action to the District of Columbia.  Judge Swain subsequently
issued a decision likewise denying the same motion.  Mortgage
Resolution Servicing, 2015 WL 9413881, at *2.

11

commercial dispute between the parties" and the defendants have purportedly agreed to produce these. (Def. Reply at 2). Documents relating to communications, investigations, research, policies, or selection criteria connected to loan forgiveness letters sent on September 13, 2012, December 13, 2012, and January 13, 2012, are also relevant, as are similar documents relating to the Pre-DOJ Lien Release Program, even though these documents relate also to loans not sold to the plaintiffs.[6] (Pl. Memo. at 17-19). The defendants shall therefore produce documents responsive to any of the relevant requests for production that fall into one of these two sub-categories.

There is one request that merits a short, separate discussion. Plaintiffs' RFP No. 7 seeks documents relating to the criteria and processes defendants employed in deciding to place loans in the RCV1 database. (App. 1 at 27). The complaint alleges that by placing loans in this database, which contained loans "charged-off for accounting purposes" (Def. Memo. at 18), the defendants "den[ied] the borrowers their rights concerning federally-related mortgages yet allowed [the defendants] to retain the lien and the benefit of the security interest." (Complaint, ¶ 60(g)). It is clear that the RCV1 database included some of the loans sold to the plaintiffs that form the basis of the breach of contract and commercial tort claims in this case. (Complaint, ¶ 60(g); Def. Memo. at 18). Therefore, this request is relevant (in the broad

---

[6] The defendants have not argued that this discovery would be unduly burdensome. (Def. Memo. at 9-11).

sense contemplated by Rule 26) to those claims and these documents shall be produced.

2.   Documents Relevant to RICO Claim

In light of their assertedly meritorious motion to dismiss the plaintiffs' RICO claim, the defendants seek a protective order in the form of a partial stay of discovery shielding them from producing a subset of documents responsive to the same fifteen RFPs that are relevant only to that claim.  (Def. Memo. at 12-17).

Although in most cases a motion to dismiss does not automatically stay discovery, a court has "considerable discretion," Integrated Systems and Power, Inc. v. Honeywell International, Inc., No. 09 Civ. 5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009), to determine that "a pending motion to dismiss [] constitute[s] 'good cause' for a protective order staying discovery," Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd., 297 F.R.D. 69, 72 (S.D.N.Y. 2013).  Courts should "look to the particular circumstances and posture of each case" and consider "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion."  Id. (alteration in original) (first quoting Alford v. City of New York, No 11 CV 622, 2012 WL 947498, at *1 (E.D.N.Y. March 20, 2012), and then quoting Brooks v. Macy's Inc., No. 10 Civ. 5304, 2010 WL 5297756, at *2 (S.D.N.Y. Dec. 21, 2010)).

Here, the plaintiffs do not argue that the motion to dismiss is insufficiently substantial for that factor to weigh in favor of a stay.  (Pl. Reply at 5-8; Def. Reply at 4; Surreply Declaration

13

of Helen David Chaitman dated June 27, 2016 ("Pl. Surreply")).
That concession by omission is well-taken.  They do, however,
contend that the discovery is not "disproportionately burdensome"
for the defendants and that a stay will "severely prejudice" the
plaintiffs.  (Pl. Reply at 6-8).

a.  Burden

The defendants specifically object to requests for production
seeking documents relating to the selection of the recipients of
all loan forgiveness letters sent by the defendants, if those
letters are not connected to three dates mentioned in the
complaint; all written communications with borrowers for whose
loans the defendants claimed consumer relief not only pursuant to
the National Mortgage Settlement and the RMBS Settlement, but also
pursuant to the Emergency Economic Stabilization Act of 2008 (a
statute not mentioned in the complaint in this action, but cited in
the Schneider Complaint (Schneider Complaint, ¶ 52)); documents
identifying all loan modifications for which the defendants claimed
consumer relief under the National Mortgage Settlement consent
decree; and written communications with the monitor of the National
Mortgage Settlement consent decree discussing RCV1.  (Def. Memo. at
13-14; App. 1 at 28, 30-31).  They characterize these RFPs -- Nos.
27, 29, 36, and 38 -- as "extremely broad and burdensome" and
"lack[ing] any arguable relevance to [the] [p]laintiffs' commercial
tort or breach of contract claims."[7]  (Def. Memo. at 14).

    [7] The defendants "do[] not concede" that the remainder of the
fifteen relevant requests for production "are relevant or
proportional to the needs of the case, even assuming [] that the

14

The defendants assert that using the plaintiffs' proposed search terms "designed to capture documents related to their RICO allegations and qui tam case" for just one of the twenty-six requested custodians yields over 650,000 documents. (Def. Memo. at 15; Declaration of Phil Verdelho dated June 10, 2016 ("Verdelho Decl."), attached as Exh. 4 to Def. Memo., ¶ 17). They have submitted a declaration from JPMorgan Chase Bank's Executive Director for Electronic Platform Discovery Services -- a professional who manages the firm's e-Discovery technologies and responsibilities -- who attests that the total cost of reviewing that single custodian's responsive documents would be nearly $1,000,000. (Verdelho Decl., ¶ 20). The plaintiffs state that this estimate "strains, if not shatters, all credibility," and is a "ludicrous" "sham." (Pl. Reply at 6-7).

I have been presented with a sworn statement from a person knowledgeable about the defendants' documents storage systems and e-discovery technologies estimating the cost of the defendants' search for and production of documents responsive to the plaintiffs' RFPs. The plaintiffs have countered with mere speculation (and some overblown rhetoric). They request that if I do not choose simply to disbelieve the evidence the defendants present, then I order the defendants to produce a witness pursuant to Rule 30(b)(6) of the Federal Rule of Civil Procedure, so that the plaintiffs can "assess [this claim] by deposition." (Pl. Reply

Court denies [the] motion to dismiss." (Def. Memo. at 17 n.20). However, they do not address those other requests in their motion for a protective order.

15

at 6-7).

"There are circumstances where [] collateral discovery" -- also known as discovery on discovery -- "is warranted." <u>Freedman v. Weatherford International Ltd.</u>, No. 12 Civ. 2121, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014). "However, requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process <u>ad</u> <u>infinitum</u>." <u>Freedman v. Weatherford International Ltd.</u>, No 12 Civ. 2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014). A party must provide "an adequate factual basis" for its belief that discovery on discovery is warranted. <u>Freedman</u>, 2014 WL 3767034, at *3. The plaintiffs have failed to do so here. Moreover, the motion before me seeks merely a stay of discovery related to the RICO claim in the plaintiffs' complaint; here I find only that, in the context of that interim request, the discovery imposes a significant burden on the defendants in light of the fact that it may be obviated by Judge Swain's decision on the pending motion to dismiss.[8]

> b.  <u>Prejudice</u>

The plaintiffs claim they will be "severely prejudiced" if a stay is granted because having to wait for this discovery will hamstring their ability to formulate litigation and settlement strategy. (Pl. Reply at 7). But they offer no further discussion

---

[8] If the motion to dismiss is denied, I expect that the defendants will continue to explore techniques to lower the cost of production and, if appropriate, the possibility of sharing the cost with the plaintiffs.

of what particular strategic decisions will need to be made prior to the decision on the motion to dismiss.  Moreover, the motion to dismiss is fully briefed, so any consequent stay is likely to be short-lived.  See, e.g., Integrated Systems and Power, 2009 WL 2777076, at *1 (imposing stay during pendency of motion to dismiss where briefing on motion would be completed within one month of application and stay would therefore delay commencement of discovery "for only a few months").

I therefore grant the defendants motion for a protective order staying discovery that is relevant only to the plaintiffs' RICO claim until the motion to dismiss is decided.  I note, however, that if the motion is denied, and the stay has the effect of increasing the cost of discovery in this case, either because it results in duplication of work or for any other reason, the defendants will not be heard to complain of that incremental burden (and any added costs the plaintiffs incur may be shifted).

C.   Category Two Documents

These are documents related to data on loans the defendants sold or offered for sale to the plaintiffs.

1.   Request No. 3

This requests asks for documents sufficient to identify various details (number, type, amount, security, status, and borrower) of loans the defendants "sold, transferred, put into the name of, designated as belonging to, or offered to sell to" the plaintiffs.  (App. 2, attached as Exh. to Pl. Memo., at 34).  The defendants have agreed to produce documents related to loans

included on the so-called "Corrupted List," a list provided by the defendants to the plaintiffs in connection with the 2009 sale of loans, which the plaintiffs allege was "grossly deficient" because it did not include certain basic information (Complaint, ¶ 46), as well as any loan "that has a <u>bona fide</u> nexus to the parties' commercial relationship, including other loans purchased by [the] [p]laintiffs." (Def. Memo. at 18 & n.21). They object, however, to identifying and producing loan data for "additional loans sold to [the] plaintiffs." (Def. Memo. at 18-19).

As expressed, the defendants' objection is nearly unintelligible. Having agreed to produce information related to "any loan" with a nexus to the commercial relationship between the parties "including other loans purchased by [the] [p]laintiffs," it is unclear how they can then refuse to produce information about "additional loans sold to the plaintiffs." Is there some unexplained difference between loans the plaintiffs purchased from the defendants and loans the defendants sold to the plaintiffs?

It appears from the context, however, that the defendants object to producing information identifying loans included in the RCV1 database, which have been charged-off for accounting purposes. (Def. Memo. at 18). According to a declaration from Michael J. Zeeb, a Vice President of Mortgage Banking Recovery at JPMorgan Chase Bank, the RCV1 loans "cannot normally be queried using the identity of the entity to which a loan has been sold." (Declaration of Michael J. Zeeb dated June 10, 2016, attached as Exh. 5 to Def. Memo., ¶ 4; Def. Memo. at 18-19).

The plaintiffs therefore ask for a Rule 30(b)(6) deposition to challenge that assertion.   (Pl. Reply at 9).   But they have provided no factual basis to support their skepticism about the defendants' explanation of the workings of the RCV1 database.   Such a deposition is therefore an unsuitable remedy at this time. However, if the defendants maintain other databases containing the requested information about loans sold to the plaintiffs that can be searched by reference to the identity of the buyer of the loan, the defendants shall produce such information.[9]

    2.   Request Nos. 16-18 and 21

These requests seek documents related to the servicing, foreclosure, charge-off amount, and payment of any loan included on the Corrupted List.   (App'x 2 at 34-37).   The defendants have agreed to "query the appropriate database(s) and retrieve any reasonably accessible data regarding the loans," and argue that therefore the motion to compel is moot as to these requests.   (Def. Memo. at 17-18).   The plaintiffs object that the use of the terms "'appropriate database(s)' and 'reasonably accessible data' gives [the] [d]efendants far too much license to withhold responsive documents."[10]   (Pl. Reply at 10).

---

[9] The defendants' suggestion that this request is objectionable because it is the plaintiffs' responsibility to "identify the specific loans that form the basis of their claims" (Def. Memo. at 19) is unavailing.   The request seeks information that is within the bounds of Rule 26's broad definition of relevance.

[10] The plaintiffs also object to the custodians and search terms that the defendants propose, but the parties have agreed to meet and confer to resolve that disagreement.   (Pl. Reply at 10 n.5).

Rule 26 requires that a party produce electronically stored information insofar as it is "reasonably accessible," and even where it is not reasonably accessible "if the requesting party shows good cause." Fed. R. Civ. P. 26(b)(2)(B) & advisory committee's note to 2006 amendments; see also Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc., 272 F.R.D. 350, 358 (W.D.N.Y. 2011). The rule also requires the responding party to

> identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

Fed. R. Civ. P. 26 advisory committee's note to 2006 amendments. Here, the defendants have offered a Rule 30(b)(6) witness to testify on some subjects relevant to the plaintiffs' concerns: (1) the general retention policies applicable to the defendants' mortgage lending and debt sale business; (2) the document retrieval procedures used in this case; and (3) the location, storage, and maintenance of (a) communications with or regarding the plaintiffs and (b) communications and documents or data relating to loans sold or offered to the plaintiffs.[11] (Email of Christian Pistilli dated June 8, 2016, attached as part of Exh. A to Pl. Surreply). When this additional information is produced along with the defendants'

---

[11] The defendants have not agreed to produce a witness to testify as to electronic database retrieval systems generally, so the offered witness will presumably not testify as to the assertions made in Mr. Zeeb's declaration mentioned above. (Pl. Surreply, ¶ 4; Email of Suzan Arden dated June 9, 2016, attached as part of Exh. A to Pl. Surreply).

responsive documents, the plaintiffs should be able to better assess the likelihood that other databases would include relevant data.

      3.   Request Nos. 28 and 32[12]

These requests seek data about loans that were the subject of debt forgiveness letters sent out on September 13, 2012, December 13, 2012, and January 12, 2013, and about liens that were released pursuant to the Pre-DOJ Lien Release Project. (App. 2 at 37). The defendants argue that these requests are overbroad, disproportionate, and irrelevant because they do not relate only to loans purchased by the plaintiffs. (Def. Memo. at 19). The plaintiffs respond that, as the defendants have indicated that they are incapable of determining the entire universe of loans were sold to the plaintiffs and because the operative complaint alleges that some loan numbers were altered, post-sale, this data will "provide[] a failsafe mechanism for [the] [p]laintiffs to check their loans against the full list . . . without allowing [the] [d]efendants the option of concealing [] information if it resides in an inappropriate database or somehow proves not to be 'reasonably accessible.'" (Pl. Reply at 10).

According to the plaintiffs, more than 50,000 loan forgiveness letters were sent out on the relevant dates, and "tens of

_____

[12] Some of the parties' papers misidentify the second request for production at issue as No. 31. (Def. Memo. at 19; Pl. Reply at 10). However, it is actually No. 32. (Pl. Memo. at 25; App. 2 at 37; Defendants' Objections and Responses to Plaintiffs' First Request for the Production of Documents to All Defendants, attached as Exh. A to Declaration of Helen Davis Chaitman dated May 27, 2016, at 24-25).

thousands" of liens were released during the period of the Pre-DOJ Lien Release Program. (Complaint, ¶¶ 103-104, 144). Producing the data requested would be a significant undertaking that is disproportionate to the plaintiffs' justification for demanding the information. To the extent that the plaintiffs worry that some relevant information will be missed because it is kept in a database that is not searched or is not reasonably accessible, those concerns should be ameliorated by the additional disclosures, outlined above, that the defendants will make pursuant to Rule 26 and in the 30(b)(6) deposition.[13]

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion to compel (Docket no. 93) is granted in part as set out above. The defendants' cross-motion for a protective order (Docket no. 98) is granted.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 14, 2016

---

[13] Indeed, the plaintiffs' apparently factually unsupported suspicion that the defendants will hide responsive documents, which permeates their submissions on these motions, is inappropriate.

Copies transmitted this date:

Helen D. Chaitman, Esq.
Lance Gotthoffer, Esq.
Chaitman LLP
465 Park Ave.
New York, NY 10022

Robert D. Wick, Esq.
Michael M. Maya, Esq.
Christian J. Pistilli, Esq.
Covington & Burling, LLP
One City Center
850 10th St., NW
Washington, DC 20001

Michael C. Nicholson, Esq.
Covington & Burling LLP
620 Eighth Ave.
New York, NY 10018-1405