UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MORTGAGE RESOLUTION SERVICING,
LLC, et al.,

        Plaintiffs,

  -v-                                           No. 15 CV 293-LTS-JCF

JPMORGAN CHASE BANK, N.A., et al.,

        Defendants.

----------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion by Defendants JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., and Chase Home Finance, LLC (collectively, "Chase" or "Defendants"), to dismiss counts four through nine of the operative Third Amended Complaint (docket entry no. 67 ("TAC")). (See docket entry no. 76.) Those counts allege conversion, tortious interference, fraud, negligent misrepresentation, slander of title, and a civil RICO conspiracy. (TAC ¶¶ 164-220.) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (with respect to the civil RICO count) and 28 U.S.C. § 1332 (with respect to all other claims). The Court has carefully considered all of the parties' submissions, and for the reasons stated below, the motion to dismiss is granted as to count four (conversion), count five (tortious interference), count eight (slander of title), and count nine (civil RICO), and denied as to count six (fraud) and count seven (negligent misrepresentation).

### BACKGROUND

The following facts relevant to the disposition of the instant motion are drawn

from the TAC and are assumed to be true for the purposes of this motion to dismiss.

Plaintiffs Mortgage Resolution Servicing, LLC ("MRS"), S&A Capital Partners, Inc. ("S&A"), and 1st Fidelity Loan Servicing, LLC ("1st Fidelity" and, collectively with MRS and S&A, "Plaintiffs"), are in the business of purchasing from financial institutions and servicing portfolios of nonperforming residential mortgage loans. (TAC ¶¶ 11-12.) All three companies are Florida corporations whose president is Laurence Schneider. (TAC ¶¶ 2-4.) S&A and Chase entered into a Master Mortgage Loan Sale Agreement (the "MMLSA") in approximately April 2005. (TAC ¶¶ 13-14.) S&A and 1st Fidelity bought loans from Chase pursuant to the MMLSA from 2005 through 2010. (TAC ¶¶ 14-17.)

In 2008, Eddie Guerrero, a Loss Recovery Supervisor at Chase, contacted Schneider to discuss Chase's interest in selling a portfolio of first-lien residential mortgage loans. (TAC ¶ 19.) Guerrero represented that this set of loans included mortgages on low-value properties in areas experiencing a significant housing crisis as well as some more valuable loans that had erroneously been charged off by Chase. (TAC ¶¶ 19-20.) Schneider provided Chase with an application to purchase the pool of loans. (TAC ¶ 21.)

In October 2008, Guerrero sent Schneider preliminary information on the loan portfolio, but the information was incomplete. (TAC ¶ 22.) A more complete spreadsheet (though one still missing some information) was sent to Schneider in November 2008. The November 2008 spreadsheet indicated that the portfolio included 5,785 first-lien mortgages with an aggregate balance of approximately $230 million. (TAC ¶ 24.) Chase represented that the reason for the missing information in the November spreadsheet was that Chase was still processing information it received during its acquisition of Washington Mutual, Inc. (TAC ¶ 26.)

In December 2008, Schneider told Guerrero that he would not make an offer to purchase the mortgage portfolio. (TAC ¶ 29.) In response, Guerrero offered to sell the portfolio for $200,000. (TAC ¶ 30.) Based on an analysis of the November data set, which included several loans Schneider believed to be valuable, Schneider agreed to purchase the portfolio for $200,000. (Id.) On December 22, 2008, Schneider formally communicated an offer to purchase a $100 million portfolio of first-lien mortgages,[1] and sent a cashier's check for $200,000 to Chase the following day. (TAC ¶¶ 32-33.)

On February 4, 2009, Chase sent Schneider a Mortgage Loan Purchase Agreement (the "MLPA"), which contract would govern the sale of the mortgage portfolio. (TAC ¶ 35.) The February 4 draft of the MLPA contained a placeholder for "Exhibit A", which was to list the mortgages being sold. (Id.) The draft did, however, represent that Chase would be conveying 4,271 loans with an aggregate balance of $172,093,033.13.[2] (Id.) Chase told Schneider that the final version of Exhibit A would not be provided until after the MLPA was signed. (TAC ¶ 36.)

The final version of the MLPA, signed by Chase and MRS, was sent to Schneider on February 25, 2009. (TAC ¶¶ 37-38.) The final MLPA provided for the sale of 3,529 mortgages with an aggregate balance of $156,324,399.24 (per the nomenclature used by the TAC, the "MRS Loans"). (TAC ¶ 38.) The TAC alleges that Chase included an additional $56

---

[1] The source of the $100 million figure contained in Schneider's offer is unclear, given the TAC's representation that the November data set contained loans with an aggregate balance of $230 million. (Compare TAC ¶ 24 with ¶ 32.)

[2] The TAC alleges that this was $72 million "more than Schneider had been informed would be included in the pool," apparently relying on the December 2008 email from Schneider that conveyed an offer to purchase $100 million in first-lien mortgages. (TAC ¶ 35.)

million in mortgages above Schneider's $100 million purchase offer, without requesting any additional consideration, was that Chase knew that the MRS Loans had been serviced in violation of state and federal law, and Chase was therefore transferring to MRS a significant set of liabilities.  (TAC ¶¶ 40-41.)  The TAC alleges that this represented a violation of the MLPA's representations and warranties, which provided that the mortgages complied with applicable laws.  (TAC ¶¶ 41-43.)  The TAC alleges that the allegedly false statements made by Chase prior to the signing of the MLPA represent both fraudulent inducement and negligent misrepresentation.  (TAC ¶¶ 176-192.)

On February 25, 2009, after the MLPA had been fully executed, Chase sent Schneider the list of mortgages that was Exhibit A to the agreement.  (TAC ¶ 46.)  The version of Exhibit A Schneider received was missing significant data, however, including the outstanding balance of the loans and the addresses of the mortgaged properties.  (TAC ¶ 46.)  Chase represented to Schneider that the missing information was due to Chase's difficulty in converting information from Washington Mutual's system, as had been the case with the November 2008 data set.  (TAC ¶ 47.)  MRS was forced to spend its own resources to complete the information for the Exhibit A mortgages.  (TAC ¶ 49.)

The TAC alleges that the list of mortgages contained in Exhibit A violated multiple provisions, representations, and warranties contained in the MLPA.  As relevant to the instant motion to dismiss, the TAC alleges:

- Chase never provided a complete Exhibit A, and its representations that the reason Exhibit A was incomplete was due to Washington Mutual's systems were false because none of the MRS Loans contained in Exhibit A had been originated by Washington Mutual (TAC ¶¶ 46-48);

- Chase had serviced the MRS Loans unlawfully (TAC ¶ 60);

- After the MLPA was executed, Chase contacted borrowers of MRS Loans, as well as loans previously purchased by S&A and 1st Fidelity under the MMLSA, and represented that Chase was forgiving the entire balance of their mortgage loan pursuant to the National Mortgage Settlement ("NMS") between Chase and the federal government (TAC ¶¶ 97-109);

- After the MLPA was executed, and also pursuant to the terms of the NMS, Chase released liens on properties whose mortgages had been sold to MRS, S&A, and 1st Fidelity (TAC ¶¶ 134-140).

In addition to these allegations, which also form the basis of Plaintiffs' claims for conversion, tortious interference, and slander of title, Plaintiffs allege that Defendants and the debt collection and loan servicing agencies that Defendants used in connection with the forgiveness letters and lien releases, formed an enterprise within the meaning of the civil RICO statute, 18 U.S.C. § 1962(c), whose purpose was to fraudulently represent to the government that Chase had fulfilled the terms of the NMS.  (TAC ¶¶ 204-206.)

## DISCUSSION

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  This requirement is satisfied when the factual material in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  A complaint

that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice to state a claim. Twombly, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiffs' Tort Claims (Counts Four through Eight)

Under New York law, which the parties agree applies to the state-law claims asserted in the TAC, tort "causes of action . . . based on the same facts as the cause of action to recover damages for breach of contract" should be dismissed as duplicative of the contract claim. Edem v. Grandbelle Int'l, Inc., 118 A.D.3d 848, 849 (N.Y. App. Div. 2d Dep't 2014). A "defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (1995).

Defendants seek dismissal of the five claims that sound in tort (conversion, tortious interference, fraudulent inducement, negligent misrepresentation, and slander of title), arguing that they are improperly duplicative of the Plaintiffs' claim for breach of contract, and fail to state a claim. To avoid dismissal of their tort claims as duplicative, Plaintiffs must identify either a duty owed by the Defendants distinct from the contract, or tortious conduct "separate and apart" from Defendants' obligations under the MLPA. Id.

The facts underlying the conversion, tortious interference, and slander of title claims are identical to those alleged in support of the breach of contract claim. In connection

with the three claims, Plaintiffs allege only that Chase improperly wrote forgiveness letters and/or released liens relating to mortgages that had been sold to MRS. (Compare TAC ¶ 152 (breach of contract) with ¶ 168 (conversion); ¶ 173 (tortious interference); and ¶ 194 (slander of title).) Indeed, Plaintiffs repeatedly note in their tort causes of action that the acts in question represented a "violation of Chase's obligations under the MLPA and the other loan sale agreements." (See, e.g., ¶ 174 (tortious interference claim).) Counts four, five, and eight of the TAC are therefore subject to dismissal as duplicative of Plaintiffs' breach of contract claim.

Plaintiffs' claim for conversion (count four) also fails to allege facts supporting an essential element of that claim under New York law. Conversion requires that a plaintiff "demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing." Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Co., 64 A.D.3d 85, (N.Y. App. Div. 2d Dep't 2009) (internal quotation marks and citation omitted). The plaintiff must also show that the defendant "exercise[d] unauthorized dominion and control to the complete exclusion of the rightful possessor." Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). The TAC does not identify with specificity any property over which Defendants allegedly exercised exclusive control, which is an independent basis for dismissal of the conversion claim.

Plaintiffs' claim for slander of title (count eight) also fails to allege facts supporting all of the necessary elements of that claim under New York law. Claims for slander of title require a particularized allegation of special damages: "the loss of something having economic or pecuniary value" that "must flow directly from the injury to reputation" caused by the slander. Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 179 (2d Cir. 2000); see also Rosenbaum v. City of New York, 8 N.Y.3d 1, 12 (2006) (holding that slander of title claims

require an allegation of special damages). Plaintiffs fail to identify with particularity any special damages, as required by Federal Rule of Civil Procedure 9(g), and therefore have failed to state a claim for slander of title.

As to Plaintiffs' claims for fraudulent inducement and negligent misrepresentation, however, Plaintiffs have sufficiently identified underlying facts separate and apart from those on which their breach of contract claims are based. Under New York law, a plaintiff may plead fraud claims alongside contract claims if they "allege misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract." Wyle Inc. v. ITT Corp., 130 A.D.3d 438, 439 (N.Y. App. Div. 1st Dep't 2015). Such misrepresentations can support a separate fraud claim where, as here, "a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts," because such misrepresentations are "collateral to the contract (though [they] may have induced the plaintiff to sign the contract) and therefore involve[] a separate breach of duty." First Bank of Ams. v. Motor Car Funding, 257 A.D.2d 287, 291 (N.Y. App. Div. 1st Dep't 1999). MRS adequately alleges that Defendants made false and/or misleading representations concerning the characteristics of the mortgage pool prior to the signing of the MLPA, which induced MRS to sign the MLPA. These allegations suffice to state claims that are not duplicative of the breach of contract claim, and Defendants' motion to dismiss the fraud and negligent misrepresentation counts (nos. five and six in the TAC) are therefore denied.

Plaintiffs' Civil RICO Claim (Count Nine)

The federal RICO statute makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C.S. § 1962(c) (LexisNexis 2010); see also United States v. Indelicato, 865 F.2d 1370, 1373 (2d Cir.1989) (en banc).  Under the statute, "[e]nterprise is defined to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir.1984) (quoting 18 U.S.C. § 1961(4) (internal quotation marks and modifications omitted)).  A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

        The alleged RICO enterprise described in the TAC consists of "Defendants and their officers" allegedly working alongside "the various debt collection agencies that the Defendants utilized in connection with the loans sold to the Plaintiffs, the outside services involved in sending out the thousands of debt forgiveness letters to borrowers whose loans had been sold to Plaintiffs or other third parties, and the persons employed by other entities who assisted the Defendants in releasing liens on collateral that had been transferred to the Plaintiffs or other third parties."  (TAC ¶ 204.)  This allegation does not, however, suffice to identify a RICO enterprise; as described, these entities "are no more united in an enterprise than any vendor and its customers."  Manhattan Telecommc'ns Corp., Inc. v. DialAmerica Marketing, Inc., 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004) ("Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise." (internal quotation marks omitted)).  Nor do Plaintiffs identify any "common purpose" of the alleged enterprise as required by the statute.

Turkette, 452 U.S. at 583.  The allegations that the purpose of the enterprise was to permit Chase fraudulently to fulfill its obligations under the NMS plausibly relate only to Chase's interests; the TAC provides no factual basis for an inference that the unnamed debt collection agencies and other outside services had this purpose in common with Chase.  See Continental Petroleum Corp., Inc. v. Corp. Funding Partners, LLC, No. 11 CV 7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) ("The Amended Complaint's failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal.").

Plaintiffs have also failed to plead facts plausibly framing the requisite closed- or open-ended continuity of a RICO enterprise.  By statute, a civil RICO plaintiff must allege a "pattern of racketeering activity." 18 U.S.C.S. §§ 1961(5), 1962(c).  The Supreme Court has interpreted this requirement to mean that a civil RICO plaintiff demonstrate the continuity of the enterprise over time; if the continuity is closed-ended, the plaintiff must plead "a series of related predicates extending over a substantial period of time."  H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Here, the alleged goal of the enterprise was to falsely establish fulfillment of consumer relief obligations under settlements concluded with government authorities in 2012 and 2013.  (TAC ¶ 210.)  The mailing of loan forgiveness letters and release activity in aid of the alleged scheme occurred, according to Plaintiffs, in those same years.  (TAC ¶¶ 212(h), (i).) Plaintiffs' allegations of fraudulent activity pre-dating the settlements have no non-speculative connection to the alleged settlement-related goal of the enterprise and therefore cannot function to demonstrate that the alleged RICO enterprise was in existence for a longer period of time. The 15-month period of settlement-related activity is insufficient to established closed-ended

continuity. See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999) ("Since the Supreme Court decided H.J., Inc., this Court has never held a period of less than two years to constitute a 'substantial period of time.'").

Nor does the TAC allege facts sufficient to demonstrate the existence of an open-ended conspiracy. Plaintiffs' allegation that liens were released in 2013 does not demonstrate the threat of ongoing activity in aid of the alleged scheme to falsify compliance with the consumer relief requirements of the settlements. See id. (noting that, to demonstrate open-ended continuity, a plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed").

Plaintiffs have therefore failed to allege an enterprise, and the continuity of such an enterprise, as required to state a civil RICO claim, and count nine of the TAC is dismissed accordingly.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied with respect to counts six and seven of the TAC, and is granted with respect to counts four, five, eight, and nine is granted. Plaintiffs may move for leave to amend by **March 6, 2017**, which motion must be accompanied by a proposed amended complaint and a blackline comparison of the proposed amended complaint to the Complaint.

This Memorandum Opinion and Order resolves docket entry no. 76. The case remains referred to Magistrate Judge Francis for general pre-trial management.

SO ORDERED.

Dated: New York, New York
February 13, 2017

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge