UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MORTGAGE RESOLUTION SERVICING,
LLC, et al.,

       Plaintiffs,

  -v-                                                         No. 15 CV 293-LTS-RWL

JPMORGAN CHASE BANK, N.A., et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiffs Mortgage Resolution Servicing, LLC ("MRS"), 1st Fidelity Loan Servicing, LLC ("1st Fidelity"), and S&A Capital Partners, Inc. ("S&A" and, together with MRS and 1st Fidelity, "Plaintiffs") bring this action against Defendants JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., and Chase Home Finance, LLC (collectively, "Chase" or "Defendants"), asserting civil RICO and common-law contract, tort, and fraud claims. On February 13, 2017, the Court granted Chase's motion to dismiss Plaintiffs' conversion, tortious interference, slander of title, and civil RICO claims. (Docket entry no. 140, the "February Opinion.") In the February Opinion, the Court granted Plaintiffs permission to move for leave to amend their complaint. (Id.) Plaintiffs now move for leave to file a Fourth Amended Complaint (docket entry no. 150-1, the "FAC"). (See docket entry no. 150.) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and § 1332. The Court has considered carefully all of the parties' submissions, and for the reasons stated below, Plaintiffs' motion for leave to file a Fourth Amended Complaint is granted in part and denied in part.

BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case, which are laid out in detail in the February Opinion. (February Opinion at 1-5.) The following abbreviated recitation of facts is drawn from Plaintiffs' FAC, the well-pleaded factual allegations of which are taken as true for purposes of this motion practice, and from exhibits to Plaintiffs' FAC, which are incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Plaintiffs are in the business of purchasing from financial institutions and servicing portfolios of nonperforming residential mortgage loans. (FAC ¶¶ 93-94.) In approximately April 2005, S&A and Chase entered into a Master Mortgage Loan Sale Agreement. (FAC ¶ 96; FAC Ex. 2, the "S&A MMLSA.") In September 2010, 1st Fidelity and Chase entered into a separate Master Mortgage Loan Sale Agreement. (FAC ¶ 99; FAC Ex. 3, the "1st Fidelity MMLSA.") S&A and 1st Fidelity bought loans from Chase pursuant to their respective MMLSAs from 2005 through 2010. (FAC ¶¶ 97, 99, 101.) On February 25, 2009, Chase and MRS signed a Mortgage Loan Purchase Agreement for the sale of certain mortgages. (FAC ¶ 138; FAC Ex. 4, the "MLPA.") The FAC alleges, among other things, that Chase never provided a complete list of mortgages that were being sold pursuant to the MLPA (FAC ¶¶ 146-149), that Chase sold MRS loans that were not secured by mortgages or which Chase did not own (FAC ¶¶ 150-159), that Chase serviced the MRS loans unlawfully (FAC ¶¶ 160-161), that Chase misrepresented the value, quantity, and principal balance of the loans it sold to MRS (FAC ¶¶ 162-164), that Chase collected and retained payments on loans it had sold to MRS (FAC ¶¶ 168-175), that Chase sent forgiveness letters informing borrowers whose loans had been sold to Plaintiffs that their debt was forgiven (FAC ¶¶ 45, 191-193, 203-266), and that Chase released liens securing loans sold to Plaintiffs (FAC ¶¶ 267-282).

Plaintiffs allege that Chase engaged in these practices, in part, to avoid federal statutory and regulatory duties related to mortgage servicing, and to fraudulently represent to the government that Chase had fulfilled the terms of the National Mortgage Settlement ("NMS") and the Residential Mortgage Backed Securities Settlement ("RMBS" and, together with the NMS, the "Lender Settlements") between Chase and the federal government.  (FAC ¶¶ 30-34, 45-92.)  Under the Lender Settlements, Chase was required to provide several billion dollars in consumer relief to borrowers, including through loan forgiveness and refinancing.  (FAC ¶¶ 47, 67.)  The FAC alleges that Chase maintained an off-the-books system of records called RCV1, where Chase "park[ed] flagged loans" which Chase would then sell to unsuspecting investors or collect on in violation of federal law.  (FAC ¶¶ 21-29.)  Plaintiffs allege that in mid-2012, in anticipation of the NMS, Chase began a wholesale release of thousands of liens housed in RCV1 in a deliberate scheme to evade its obligations under the Lender Settlements and seek improper credit toward its consumer relief requirements.  (FAC ¶ 62.)  Plaintiffs aver that Chase continued this practice through December 31, 2016, the cut-off date for seeking consumer relief credit under the RMBS.  (Id.)

Based upon these allegations, the FAC reasserts Plaintiffs' civil RICO and RICO conspiracy claims and alleges that Chase, various third party debt collection and loan servicing agencies, the independent Monitor appointed to oversee compliance with the Lender Settlements (the "Monitor"), and various law firms, accountants, and consulting firms selected to assist the Monitor (the "Professionals"), formed an enterprise within the meaning of the civil RICO statute, 18 U.S.C. § 1962(c), whose purpose was to "relieve [Chase] of [its] legal obligations and liabilities and to pave the way to being able to seek improper credits under the [Lender Settlements] by defrauding Plaintiffs" and others.  (FAC ¶¶ 376, 380.)  Specifically, Plaintiffs

allege that Chase, with the knowledge and approval of the Monitor and the Professionals, avoided complying with NMS loan servicing requirements by releasing non-compliant, non-serviced loans housed in RCV1. (FAC ¶ 79.) Plaintiffs further allege that the Monitor and the Professionals participated in the enterprise by, among other things, receiving fees for monitoring compliance with the Lender Settlements, agreeing to exclude RCV1 loans from certain testing requirements under the NMS, failing to independently verify the integrity of Chase's systems of record, and failing to report that RCV1 loans were not being serviced. (FAC ¶¶ 82-86.) The Monitor and the Professionals allegedly participated in the enterprise to "receive lucrative payments and prestige under the Lender Settlements." (FAC ¶ 382.) The FAC alleges that third party debt collection and loan servicing agencies participated in the alleged enterprise by, among other things, failing to verify liens, recording fraudulent lien releases, and collecting on loans that Chase had sold to Plaintiffs. (FAC ¶¶ 88-92.) These third parties allegedly participated in the enterprise to "receive continued employment and profits." (FAC ¶ 382.)

In addition to reasserting Plaintiffs' civil RICO claims, the FAC reasserts Plaintiffs' conversion and tortious interference claims, adds a new claim for promissory estoppel, and adds 1st Fidelity and S&A as plaintiffs to MRS's claim for fraud and fraudulent inducement. On January 8, 2018, Chase provided the Court with supplemental authority relevant to Plaintiffs' motion. (Docket entry no. 266.) In response, Plaintiffs provided their own supplemental materials, and requested that the Court strike Chase's letter and permit the filing of unspecified supplemental pleadings. (Docket entry no. 283.)

DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). While granting or denying such leave is within the discretion of the district court, Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). However, a "pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).

Plaintiffs' Conversion, Tortious Interference, and Promissory Estoppel Claims

Defendants argue that amendment of Plaintiffs' conversion, tortious interference, and promissory estoppel claims is futile because these claims are duplicative of Plaintiffs' breach of contract claims. Under New York law, tort "causes of action . . . based on the same facts as the cause of action to recover damages for breach of contract" should be dismissed as duplicative of the contract claim. Edem v. Grandbelle Int'l, Inc., 118 A.D.3d 848, 849 (N.Y. App. Div. 2d Dep't 2014). Moreover, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 388 (1987). The facts underlying the amended conversion and tortious interference claims are identical to those alleged in support of Plaintiffs' contract claims. Like their breach of contract claims, Plaintiffs' amended conversion and tortious interference claims are based on Chase's improper issuance of forgiveness letters, improper lien releases, and the collection and retention of payments on loans sold to Plaintiffs. (Compare FAC ¶¶ 298-299, 304, 309 with ¶¶ 317-322, 335, 338.) Plaintiffs' promissory estoppel claim is likewise premised on similar allegations. (Compare FAC ¶¶ 298-299, 304, 309 with ¶ 365). Because Plaintiffs' conversion, tortious interference, and promissory estoppel claims are duplicative of, and arise out of the same subject matter as, their breach of contract claim, leave to amend to restore and/or add these claims is denied as futile.

Plaintiffs' Fraud and Fraudulent Inducement Claims by 1st Fidelity and S&A

To state a fraud claim under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff

reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)).  Here, Plaintiffs do not allege that Chase made false and/or misleading representations to 1st Fidelity or S&A.  Instead, Plaintiffs' fraud and fraudulent inducement claims are based on statements made to MRS in connection with the MLPA.  (See FAC ¶¶ 344-347.)  With respect to S&A and 1st Fidelity, Plaintiffs only allege that Chase "knowingly made false representations to Borrowers, county recording offices, and Courts including Bankruptcy courts regarding S&A, and 1st Fidelity's ownership of loans."  (FAC ¶ 348.)  However, allegations of third-party reliance are insufficient to make out a common law fraud claim under New York law.  Pasternack v. Laboratory Corp. of Am. Holdings, 27 N.Y.3d 817, 829 (2016).  Thus, leave to add new fraud claims by 1st Fidelity and S&A is denied as futile.

Plaintiffs' Civil RICO Claims

To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." D. Penguin Bros. Ltd. v. City Nat. Bank, 587 Fed. App'x 663, 665 (2d Cir. 2014).  A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).  For an association of individuals to constitute an "enterprise," the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (internal quotations and citations omitted).

The allegations in Plaintiffs' FAC do not plausibly identify a RICO enterprise. Plaintiffs' alleged RICO enterprise consists of Chase, the Monitor, the Professionals, and various third party title clearing and debt collection agencies. (FAC ¶ 376.) Although Plaintiffs allege in a conclusory fashion that the Monitor, Professionals, and third party agencies participated in a scheme "to avoid the cost and inconvenience of servicing standards and the terms and conditions of the Lender Settlements" (FAC ¶ 382), the FAC fails to allege facts to support an inference that these entities shared Chase's alleged purpose of evading its obligations under the Lender Settlements. As the Court noted in its February Opinion, allegations that the purpose of the enterprise was to permit Chase to evade or fraudulently fulfill its obligations under the Lender Settlements plausibly relate only to Chase's interest. (February Opinion at 10.)

In this context, Plaintiffs' allegations regarding the Monitor and the Professionals' receipt of fees, alleged agreement to exclude RCV1 loans, and failures to verify and report, are insufficient to support a plausible inference that the Monitor and Professionals were participants in a coherent unified enterprise, or that they shared Chase's alleged purpose of evading Chase's settlement obligations. Indeed, Plaintiffs allegation that the Monitor and Professionals were motivated by "payments and prestige" (FAC ¶ 382) suggests the kind of routine business relationship that is generally insufficient to establish an enterprise under RICO. See, e.g., Bonadio v. PHH Mortg. Corp., No. 12 CV 3421(VB), 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (dismissing RICO claim where plaintiff's "only factual allegations relating to the enterprise are that its members had ongoing business relationships.").

Similarly, the FAC contains no allegations to support an inference that various third party title clearing and debt collection agencies shared the alleged common purpose of evading Chase's settlement obligations, and states affirmatively that these agencies acted "to

receive continued employment and profits." (FAC ¶ 382.) Plaintiffs' allegations with respect to these third party agencies are substantially similar to those in their Third Amended Complaint, which the Court dismissed because these entities were "no more united in an enterprise [with Chase] than any vendor and its customers." Manhattan Telecommc'ns Corp., Inc. v. DialAmerica Marketing, Inc., 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001). Because Plaintiffs' FAC fails to plausibly allege a RICO enterprise, leave to amend Plaintiffs' civil RICO and RICO conspiracy claims is denied as futile. See First Capital Asset Mgmt., 385 F.3d at 182 (dismissing RICO conspiracy claim because plaintiffs did not adequately allege a substantive violation of RICO).

Factual Allegations Related to Plaintiffs' Remaining Causes of Action

Chase does not oppose Plaintiffs' motion for leave to add allegations in support of their existing breach of contract claims and MRS's existing fraudulent inducement claim. Plaintiffs' motion for leave to file a Fourth Amended Complaint is therefore granted to the extent that it seeks leave to supplement facts related to Plaintiffs' remaining causes of action.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a Fourth Amended Complaint is denied to the extent that it seeks leave to reinstate Plaintiffs' conversion, tortious interference, and civil RICO claims, add a new claim for promissory estoppel, and add 1st Fidelity and S&A as plaintiffs to MRS's claims for fraud and fraudulent inducement. Plaintiffs' motion for leave to file a Fourth Amended Complaint is granted to the extent that it seeks to augment facts related to Plaintiffs' remaining causes of action. In light of the Court's ruling on Plaintiffs' motion for leave to file a Fourth Amended Complaint, Plaintiffs' request to strike Chase's letter and permit the filing of unspecified supplemental pleadings is denied. This Memorandum Opinion and Order resolves docket entry no. 150. This case remains referred to Magistrate Judge Lehrburger for general pre-trial management.

SO ORDERED.

Dated: New York, New York
March 30, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge